RESTLAND MEMORIAL PARK, a Non-profit Corporation,

v.

The UNITED STATES.

No. 50257.

United States Court of Claims.
June 5, 1956.

Robert A. Keller, Los Angeles, Cal., for plaintiff. William D. Campbell, Los Angeles, Cal., was on the brief.

Herbert Pittle, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues for compensation for the alleged temporary taking of all or a part of a cemetery known as Restland Memorial Park located in Los Angeles County, California.

The time involved is from April 1, 1942, to June 30, 1946.

The plaintiff claims that the defendant used the portion of the premises actually occupied in such a way as to deprive the plaintiff of the normal use of the remainder, and therefore in effect requisitioned the entire cemetery.

It is the defendant's position that it took only a very small portion of the cemetery and adequately compensated plaintiff for a part of that which was taken.

In the year 1928 a part of the tract involved known as Unit No. 1 was dedicated under the Health and Safety Code of the State of California and the laws of the city of Burbank to be held, occupied, and used exclusively for cemetery purposes, and in September 1938 Unit No. 2 was added in the same fashion. The total area included in the cemetery was 13.1945 acres.

The premises were first dedicated for the purposes indicated by Aimee Semple McPherson with the title Blessed Hope Memorial Park. It met with financial difficulties and was involved in bankruptcy proceedings.

On the south and west sides of the cemetery in question was another cemetery called Valhalla, which covered a large area, which had been in operation for years. On the north side of the property involved was a railroad freight line just across a boulevard. Immediately beyond the railroad is the location of the Lockheed Air Terminal and Aircraft Manufacturing Plant which occupies an area of about one square mile. On account of the railroad and the operations of the Aircraft Plant the neighborhood

is noisy and there is considerable traffic nearby.

These facts were undoubtedly known to the people who formed the plaintiff corporation which was organized in 1941 to acquire and operate the premises for cemetery purposes. When the plaintiff corporation acquired the premises in October 1941 the eastern portion described as Unit No. 1, had been sodded and contained small bronze markers scattered over the area by which it was possible to locate various graves. On Unit No. 1 there was also located a crematorium-office building. The western portion, or Unit No. 2, was not in sod and in that unit no burials had taken place.

At the time plaintiff acquired the premises there were outstanding a number of contracts for the sale of grave sites to private persons. Each contract provided for the sale of a block of six sites, the price of each block being $200. The purchasers under these contracts were in arrears in 1941 and since the plaintiff had succeeded to the rights and obligations of its predecessor it collected small sums from time to time which it applied to the purchase price. In its continuing operations the plaintiff's practice was to sell grave sites directly to morticians for immediate use. The record does not show that any grave sites were sold after plaintiff acquired the property and before the Government entered a portion of the premises.

On April 1, 1942, the defendant took for public use a portion of the western end of Unit No. 2, the amount taken being 100 by 200 feet, with access thereto from the boulevard on the north. The purpose of the taking was to provide a site for antiaircraft gun emplacements and appurtenances of a temporary nature.

On July 1, 1942, the plaintiff gave the defendant permission to use the entire premises for camouflage purposes. Pursuant to that permit the Army disked or harrowed the entire premises and refrained from watering them in order that the premises would not be visible to a possible enemy as a green spot adjacent to an important aircraft factory.

On November 20, 1942, an order was entered in a case in the United States District Court for the Southern District of California, awarding to the the United States the right to immediate possession of a portion of the premises consisting of 10,000 square feet, together with ingress and egress privileges, and a short time thereafter an amended complaint was filed covering an additional 10,000 square feet, and an order was signed by the District judge granting immediate possession of an additional 10,000 square feet, the total amount covered by the two orders being .46 of an acre. Following these orders a proceeding was had in the District Court and a decree signed vesting in the United States the right of use and occupancy for a term of years in .46 of an acre.

In a jury trial the fair rental value of the premises was found to be $483.33, as full compensation for the term November 20, 1942 to June 30, 1944. In addition the sum of $966.66 was found to represent the amount by which the remainder of the premises had been damaged by reason of the severance for the period in question.

By the terms of the decree the rental period was extended at the option of the United States for yearly periods thereafter during the existing national emergency. The amount awarded as just compensation for the area thus taken was paid in full not only for the period named in the decree, but also for the extended period to June 30, 1946, additional compensation for the extended term being paid on the same basis.

While in possession of the tract of .46 of an acre the defendant constructed a barracks building, a latrine building and some excavations for gun emplacements on the tract. The damaged portions of the redwood curbing along the driveways cost $640 to replace, which sum has not been paid by the defendant.

On a number of items of damages the proof is rather vague and uncertain. It is therefore difficult in some instances to tell whether plaintiff is entitled to recover, and in other instances as to the

amount of damages. The evidence shows that two barriers were erected along the old driveway near the southeast corner of the property, but it does not establish whether they were erected by the defendant as a security measure, or whether by the plaintiff to keep unauthorized persons from entering other portions of the premises from the roadway. At any rate, the evidence does not indicate that there was any objection on the part of the plaintiff to the barricade.

In addition to the buildings erected on the .46 of an acre tract the defendant erected a small wooden building about 6 by 6 feet, and a tent on another portion of the premises. The tent was removed a short time after it had been so placed. The evidence is not at all clear as to how much additional property was thus actually used. However, the defendant has admitted that it did occupy an additional 1.371 acres.

While the defendant was in possession of the area in question, the City Council of the city of Burbank, on June 8, 1943, approved an application by the plaintiff to be authorized to use the westerly 800 feet of the premises for automobile parking for the duration of the war, notwithstanding the property had been zoned exclusively for cemetery purposes. The plaintiff devoted the area, comprising approximately two acres, to parking purposes, and received income from parked automobiles, the amount of which the record does not disclose.

At the expiration of the term of use by the defendant the plaintiff submitted to the Department of the Army a claim for restoration. A number of items were included in the claim, these items being set out in finding 19. A judgment was entered based upon a stipulation by the counsel for the plaintiff and the defendant and a judgment for damages in lieu of restoration was entered and paid in full by the United States.

In the present action the plaintiff seeks to recover (a) rent for the remainder of the 13.1945 acres not included in the original condemnation proceedings; (b) damages for failure to restore the premises; (c) loss of purchase contracts for grave sites; and (d) loss of profits from the crematorium.

The evidence is very clear that defendant did not use, occupy or prevent plaintiff from entering upon the remainder of the premises except to the extent indicated. The evidence, however, does establish that the defendant used or occupied a small but undetermined portion of the premises in addition to the .46 of an acre. The evidence does not show how long this additional tract was used but the defendant has admitted that it did occupy the additional 1.371 acres from November 20, 1942 to June 30, 1946. It has also admitted the use of the .46 of an acre from April 1, 1942 to November 20, 1942, for which period the plaintiff has not been compensated.

The stipulation and judgment for damages as set out in finding 19 discloses that plaintiff was reimbursed for damages to such items as roadways and concrete curbing, and for the cost of removing installations, filling and leveling. The disking of the sodded and green area did not permanently injure the premises, because by merely applying water grass promptly reappeared.

The record does not show how many of the outstanding gravesite-purchase contracts which had been executed before plaintiff secured the premises and to which it succeeded to both rights and obligations, were reinstated or how much of the payment may have been collected, nor how much was due on such contracts. The crematorium was not operated during the period 1942 to 1946, but that was because there was no business to justify operation. In fact, it is not clear from the evidence just what the operation of this particular facility had been prior to the time the defendant took possession.

In the state of the record we think plaintiff is entitled to recover $640, the cost of replacing the redwood curbing; we also approve the finding of the trial commissioner who heard the evidence, that the fair rental value of the 1.371 acres for the period November 20, 1942 to

June 30, 1946, was $445.58; also, on the basis for which plaintiff had been compensated for the .46 of an acre the value of the use by defendant of this tract from April 1, 1942, to November 19, 1942, was $191.67; and $383.33, being the amount of the severance damage for that period, a total of $1,660.58.

Judgment will be entered for the plaintiff in the sum of $1,660.58, with interest as a part of just compensation, at the rate of 4 percent per annum from the dates specified to the date of payment, as follows: $640, interest from June 30, 1946; $575, interest from April 1, 1942; $445.-58, interest from March 22, 1944. The last date specified was used for the purpose of averaging the interest during the period of occupancy of 1.371 acres.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.

**Theodore ZACHARY**

v.

**The UNITED STATES.**

No. 509–55.

United States Court of Claims.
July 12, 1956.

Theodore Zachary, pro se.

William D. Kerr, Atlanta, Ga., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff seeks recovery of $5,449.35, with interest, which he alleges was an overpayment of income taxes for the fiscal year ending May 31, 1944.

Each party has moved for summary judgment.

During the fiscal year ending May 31, 1944, plaintiff received the sum of $66,725 in settlement of litigation in Michigan state courts. This he reported as income for that year, allocating the amount between the sales of shares of stock surrendered in the settlement and previous years' salary, in the amounts of $18,875 and $47,850, respectively.

Plaintiff filed a claim for refund on August 12, 1947, claiming business losses of more than $36,000 for the fiscal years ending May 31, 1945 and May 31, 1946, which he asserted should be carried back to the year 1944.

Plaintiff attached to the claim for refund an amended return for the fiscal year ending May 31, 1944. The amended return contained the further ground that the $66,725 should be reallocated as follows: